UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAMIAN R. TRAPANI,

                        Plaintiff,

   -against-                                                9:21-CV-0681 (LEK/ML)

ANTHONY J. ANNUCCI, *et al.*,

                        Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiff Damian Trapani commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application for leave to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Complaint"); Dkt. No. 3 ("IFP Application").[1] By Decision and Order entered on July 27, 2021, this Court granted Plaintiff's IFP Application, and following review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, dismissed the claims asserted in the Complaint for failure to state a claim upon which relief may be granted. Dkt. No. 7 ("July 2021 Order"). In light of Plaintiff's pro se status, he was afforded an opportunity to submit an amended complaint. Id. at 13–15.

Presently before the Court is Plaintiff's amended complaint. Dkt. No. 11 ("Amended Complaint").

---

[1] By Order entered on June 16, 2021, this action was administratively closed based on Plaintiff's failure to comply with the filing fee requirement. Dkt. No. 2. Thereafter, Plaintiff filed his IFP Application, together with the inmate authorization form required in this District, and the Clerk was directed to reopen this action and restore it to the Court's active docket. See Dkt. Nos. 3, 4, 5.

## II.     DISCUSSION

### A.  The Complaint and July 2021 Order

In his original Complaint, Plaintiff asserted claims based on alleged wrongdoing that occurred during his incarceration within the New York State Department of Corrections and Community Supervision ("DOCCS") in 2018. See generally Compl.

The Complaint was construed to assert Eighth and Fourteenth Amendment claims against Superintendent of Downstate Correctional Facility Cunningham, Superintendent of Five Points Correctional Facility Colvin, and DOCCS Commissioner Annucci based on allegations that Plaintiff was placed in punitive segregation and wrongfully incarcerated after his 2016 criminal conviction was overturned. See July 2021 Order at 4–6.

After reviewing the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, the Court dismissed Plaintiff's claims without prejudice for failure to state a claim upon which relief may be granted. See id. at 6–15.

### B.  Overview of the Amended Complaint

The Amended Complaint asserts Section 1983 claims based on alleged wrongdoing that occurred after Plaintiff's 2016 criminal conviction was overturned. See generally Am. Compl. The following facts are set forth as alleged in the Amended Complaint.

"On July 22, 2016, plaintiff was sentenced to a term of imprisonment of 2 - 4 years in state prison after he entered a plea to attempted burglary in the third degree, in open court, at the Schenectady County Superior Court." Am. Compl. ¶ 24. On October 21, 2016, Plaintiff was transferred into DOCCS' custody pursuant to a commitment order signed by Schenectady County Superior Court Judge Matthew Spyneiwski. Id. ¶ 25.

On June 7, 2018, "the judgment entered by the Schenectady County Superior Court was reversed, on the law, and the indictment underlying plaintiff's 2016 sentence and conviction for attempted burglary was dismissed by the Supreme Court of the State of New York, Third Department, Appellate Division[.]" Id. ¶ 26. The Appellate Division granted the People "leave to resubmit any appropriate charges to another grand jury[.]" Id. ¶ 27. At the time of the Appellate Division's decision, Plaintiff was "confined in punitive segregation" at Five Points Correctional Facility ("Five Points C.F."). Id. ¶¶ 28–29.

On June 12, 2018, Plaintiff was released from DOCCS' custody and transported by the Schenectady County Sheriff's Department to Schenectady County Correctional Facility ("Schenectady County C.F."). Id. ¶ 30. Immediately before Plaintiff was released from DOCCS' custody, he was told to pack up his personal belongings because he was being released, and given "state issued release clothes," "a receipt of the funds released from his inmate account, along with a check for the stated amount[,]" and "a Property Receipt[.]" Id. ¶ 31.

Following Plaintiff's arrival at Schenectady County C.F. on June 12, 2018, he was placed in punitive segregation over his objection. Id. ¶ 36. Defendant Corrections Sergeant Timothy Bruce supervised Plaintiff's admission into punitive segregation, and informed Plaintiff that he was being placed there because that is where he was housed at Five Points C.F. Id. ¶ 37. Defendant Schenectady County Sheriff Dominic D'Agostino authorized Plaintiff's placement in punitive segregation. Id. ¶ 77.

The next day, Plaintiff was transported to the County Courthouse for proceedings before the Superior Court of Schenectady County. Id. ¶ 38. Prior to appearing before the judge, Plaintiff was advised by his assigned counsel that the People had "elected to present the matter before

3

another grand jury panel and . . . were extending a plea deal of 1.5 - 3 years incarceration as a predicate felon [sic] instead of the 2 - 4 years he was initially sentenced to[.]" Id. ¶ 39. Plaintiff advised his attorney that he would take the deal "because he already had enough time in to qualify for conditional release." Id.

After Plaintiff visited with his attorney, he was brought before Judge Spyneiwski, the sentencing judge who presided over his 2016 conviction. Id. ¶ 42. Judge Spyneiwski "arraigned plaintiff on felony informations charging him with burglary in the third degree and criminal mischief in the fourth degree" and Plaintiff then "pled guilty to a Superior Court Information charging him with attempted burglary in the third degree in full satisfaction of the entire docket[,] and was sentenced to 1.5 - 3 years incarceration in state prison." Id. ¶ 44. Plaintiff was given credit for the time he already served for the 2016 burglary conviction and sentence that was reversed, and advised by Judge Spyneiwski that his sentence would "be treated as a new and separate commitment[,]" which was also noted in his new commitment papers. Id. ¶¶ 45–46.

Following the court proceeding, Plaintiff encountered a detainee named Armando Henry, who told Plaintiff that he would be placed back in punitive segregation and denied early release once he re-entered DOCCS custody, as this previously happened to Henry. Id. ¶¶ 47–48.

On June 14, 2018, Plaintiff was transported by the Schenectady County Sheriff's Department to Downstate Correctional Facility ("Downstate C.F."). Am. Compl., ¶ 49. Although Plaintiff arrived at Downstate C.F. with "a new set of sentencing minutes and a new commitment order[,]" he was "classified . . . as a routine court return pursuant to the 2016 commitment order that was no longer valid[.]" Id. ¶ 52. As a result of Plaintiff's classification, and despite his objection, he was placed back in punitive segregation. Id. ¶ 53.

One of the corrections sergeants at the facility "disagreed with the decision made by the other staff to place plaintiff back in punitive segregation for disciplinary sanctions imposed on him prior to him being released and committed again to the custody of DOCCS." Id. ¶ 54. This official later advised Plaintiff that the issue of whether Plaintiff should be housed in punitive segregation "was taken all the way up to the Superintendent[,]" defendant Robert Morton, Jr., "to no avail." Id. ¶ 55. This official also advised Plaintiff that "it was essentially up to [defendant Morton] whether to place an inmate, upon returning from a court-ordered discharge, back in punitive segregation." Id.

At some point, Plaintiff was "interview[ed]" by "parole staff." Id. ¶ 56. Plaintiff was not "released within the 10-day time period following his interview with parole staff." Id. "Instead, shortly after the 10-day period expired, plaintiff was transferred back to [Five Points C.F.]" and placed in punitive segregation over his objection. Id. The same sergeant who supervised Plaintiff's release on June 12, 2018, "supervised the escort of plaintiff back in punitive segregation" at Five Points C.F. Id. ¶ 57.

Following Plaintiff's arrival at Five Points C.F., "a few of [his] books and hygiene items" that he acquired prior to the reversal of his 2016 conviction were returned to him, but "the bulk of his personal belongings" were not. Id. ¶ 58. Plaintiff also received a "time computation sheet" shortly after arriving at Five Points C.F., which indicated his parole hearing date, his conditional release date, and his maximum expiration date, which was December 10, 2018. Id. ¶¶ 66–67. By the time Plaintiff received this document, his parole and conditional release dates had already lapsed. Id. ¶ 67.

Thereafter, Plaintiff "was made to go before the Time Allowance Committee[.]" Id. ¶ 68. The Time Allowance Committee ("TAC") recommended that "all good behavior allowances be withheld from plaintiff . . . based on his poor behavior and lack of progress and achievement in the treatment programs he was assigned" before his 2016 conviction was reversed. Id. ¶ 71. The TAC's decision was "adopted and upheld" by the Superintendent of Five Points C.F., defendant Colvin, and the Commissioner of DOCCS, defendant Annucci. Id. ¶ 72.

"Despite the loss of good behavior allowances, plaintiff was released on December 2, 2018," eight days before his maximum expiration date. Id. ¶ 74. Between June 12 and December 2, 2018, Plaintiff continuously remained in punitive segregation. Id. ¶ 76. Plaintiff was housed in punitive segregation during this time, despite his status as a "new commitment[,]" because defendants Annucci, Colvin, and Morton, authorized and enforced "a policy or procedure of not releasing on paper state prison inmates [assigned to] punitive segregation" after their underlying criminal convictions and sentences are "annulled and expunged[,]" "failed to exercise adequate supervision over subordinates[,]" and "failed to provide or enforce lawful and proper guidelines and procedures[.]" Id. ¶¶ 77, 83.

The conditions of confinement that Plaintiff endured in punitive segregation "were disproportionately different from the conditions of confinement [he] experienced . . . [as] an inmate in regular general population." Id. ¶ 59. Among other things, Plaintiff was denied his medically prescribed boots while confined in punitive segregation, and as a result, was "unable to properly exercise at all." Id. ¶ 65.

Liberally construed, the Amended Complaint asserts the following Section 1983 claims against defendants Annucci, Morton, Colvin, D'Agostino, and Bruce based on Plaintiff's

6

continued placement in punitive segregation, and the withholding of good behavior allowances, following the reversal of his 2016 criminal conviction: (1) First Amendment retaliation claims; (2) Fourth Amendment false imprisonment claims; (3) Eighth Amendment cruel and unusual punishment claims; and (4) Fourteenth Amendment due process claims.[2]

For a more complete statement of Plaintiff's claims, reference is made to the Amended Complaint.

**C. Analysis**

Because Plaintiff is proceeding in forma pauperis and is an inmate suing government employees, his Amended Complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. §

---

[2] The Amended Complaint is devoid of any allegations which plausibly suggest that any of the named defendants were personally involved in depriving Plaintiff of personal property items that were allegedly lost or destroyed. In any event, the law is well-settled that the unauthorized intentional destruction of a prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. See Hudson v. Palmer, 468 U.S. 517, 531 (1984) (citing Parratt v. Taylor, 451 U.S. 527, 541 (1981)); see also Rivera-Powell v. New York City Board of Elections, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy."). Moreover, "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001); Davis v. New York, 311 Fed. App'x 397, 400 (2d Cir. 2009) ("The existence of this adequate post-deprivation state remedy would thus preclude [plaintiff's] due process claim under § 1983 [for lost personal property]."); Vogelfang v. Capra, 889 F. Supp. 2d 489, 509 (S.D.N.Y. 2012) (dismissing Fourth Amendment claim based on unlawful confiscation of property because adequate state post-deprivation remedies were available). Thus, the Court does not construe the Amended Complaint to assert a cognizable Section 1983 claim based on the alleged loss or destruction of Plaintiff's personal property items.

1915A(b) was discussed at length in the July 2021 Order and it will not be restated in this Decision and Order. See July 2021 Order at 2–4 .

### 1. First Amendment Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." Id. (quoting Dawes, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). "A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment." Baskerville v. Blot, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citing cases).

Here, the only potential "adverse action" identified in the Amended Complaint is Plaintiff's placement in punitive segregation, and the withholding of good time credits, following the reversal of the 2016 conviction.

With respect to the withholding of good time credits, the Amended Complaint is devoid of any allegations which plausibly suggest that Plaintiff engaged in protected activity about

which members of the TAC were aware before recommending that all good time behavior allowances be withheld from Plaintiff. In addition, the allegations in the Amended Complaint make clear that the TAC's recommendation was "based on [plaintiff's] poor behavior[.]" Am. Compl. ¶ 71. In other words, the Court has no basis to plausibly infer that good time credits were withheld from Plaintiff following the reversal of his 2016 conviction <u>because</u> he engaged in some form of protected activity.

With respect to Plaintiff's placement in punitive segregation, the Amended Complaint generically alleges that Plaintiff objected to this placement following the reversal of his 2016 conviction. <u>See id.</u> ¶¶ 36, 53, 56. However, the Amended Complaint lacks any details regarding who Plaintiff spoke with regarding his "objection" to being placed in punitive segregation, or what exactly he said. Furthermore, by Plaintiff's own allegations, he was advised that he was being held in punitive segregation during his confinement at Schenectady County C.F. and Downstate C.F. because he was in punitive segregation prior to the reversal of his 2016 conviction, and was not deemed to be a new commitment. <u>See id.</u> ¶¶ 37, 52, 54. Thus, the Court also has no basis to plausibly infer that Plaintiff was held in punitive segregation after the reversal of his 2016 conviction <u>because</u> he engaged in some form of protected activity.

Accordingly, Plaintiff's First Amendment retaliation claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. *Fourth Amendment Claims*

A claim for false arrest or imprisonment brought pursuant to Section 1983 "rest[s] on the

Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted).

In this case, Plaintiff's 2016 conviction was reversed on June 7, 2018, and he remained in DOCCS' custody until June 12, 2018. However, Plaintiff entered a guilty plea on June 13, 2018, and he was given credit for all the prison time he had served up to that date, which did not exceed the maximum term of the sentence to which he pled guilty. Thus, Plaintiff was not unlawfully confined at any point prior to June 13, 2018.

Furthermore, insofar as Plaintiff alleges that he was denied good time credits to which he was entitled and/or wrongfully held in punitive segregation after his guilty plea on June 13, 2018, his claims are more properly analyzed under the Eighth and Fourteenth Amendments. See July 2021 Order at 6, n.6 ("[W]here a person has been convicted of a crime, his 'claims regarding unlawfully extending the term of his incarceration must necessarily arise from either the Eighth Amendment's prohibition of cruel and unusual punishment or the Fourteenth Amendment Due Process Clause.'" (quoting Francis v. Fiacco, No. 15-CV-0901, 2018 WL 1384499, at *6 (N.D.N.Y. Mar. 16, 2018) (collecting cases in support of finding and dismissing Fourth Amendment claim for false imprisonment arising out of alleged unlawful prolonged detention following lawful conviction)); see also Hurd v. Fredenburgh, 984 F.3d 1075, 1083–84 (2d Cir. 2021) (recognizing that a claim based on wrongful confinement beyond a prisoner's conditional release date may be cognizable under either the Eighth or Fourteenth Amendments); Resnick v. Hayes, 213 F.3d 443, 448–49 (9th Cir. 2000) (affirming dismissal of Fourth Amendment claim because convicted prisoner yet to be sentenced "had no protected liberty interest in not being confined in the SHU").

Accordingly, Plaintiff's Fourth Amendment claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

       *3. Eighth and Fourteenth Amendment Claims Based on Withholding Good Time Credits from Plaintiff*

The legal standards governing Plaintiff's Eighth and Fourteenth Amendment claims were discussed in detail in the July 2021 Order and will not be restated herein. See July 2021 Order at 7–13.

Here, Plaintiff alleges that the TAC incorrectly recommended that all good time behavior allowances be withheld from him—a recommendation that defendants Colvin and Annucci subsequently adopted—after his 2016 conviction was reversed and he pled guilty to, and received a new sentence for, third degree attempted burglary on June 13, 2018. According to Plaintiff, because he received a new sentence and new commitment order after his 2016 conviction was reversed, he was entitled to an unidentified amount of good time credits after he returned to DOCCS' custody on June 14, 2018.

As an initial matter, pursuant to Plaintiff's guilty plea on June 13, 2018, he had yet to exceed his maximum confinement period as of the date that his 2016 conviction was reversed. Moreover, the Amended Complaint does not allege that Plaintiff was ever awarded good time credits, or engaged in behavior or participated in programs that entitled him to good time credits, before his 2016 conviction was reversed. In addition, the Court has no legal basis to conclude that Plaintiff's new commitment status entitled him to good time credits that he did not earn

during the period of his incarceration leading up to the reversal of his 2016 conviction.³ Thus, the Court has no basis to plausibly infer that it was inappropriate for the TAC to consider Plaintiff's prison disciplinary history prior to the reversal of the 2016 conviction and recommend withholding good time credits based on this history, let alone that the TAC's recommendation amounted to deliberate indifference and/or a denial of a liberty interest.

Additionally, insofar as Plaintiff contends that his continued confinement in punitive segregation after the reversal of his 2016 conviction prevented him from earning good time credits, the law is well-settled that an inmate's lost opportunity for good time credits is not a harm of constitutional magnitude. See July 2021 Order at 8, n. 8 (collecting cases).

Accordingly, Plaintiff's Eighth and Fourteenth Amendment claims based on the withholding of good time credits are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

> 4. *Eighth and Fourteenth Amendment Claims Based on Plaintiff's Placement in Punitive Segregation*

Liberally construed, the Amended Complaint includes new allegations which plausibly suggest that (1) Plaintiff's 2016 conviction was reversed, and the indictment was dismissed (with leave to re-charge before a new grand jury), on June 7, 2018, (2) DOCCS officials treated

---

³ The law is well-settled that decisions related to granting or withholding good time credits are discretionary. See Fifield v. Eaton, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009) (where state law gives officials discretion, "an inmate has no constitutional right to . . . participation in prison programs which might expedite release"); N.Y. Correct. Law § 803(a) (explaining that inmates may receive credit to reduce their sentence for "good behavior and efficient and willing performance . . . in an assigned treatment program [but] . . . may [also have such credits] withheld, forfeited or canceled in whole or in part for . . . failure to perform properly in the . . . program assigned."). Additionally, New York law holds that conditional release does not become mandatory unless and until an inmate is approved for good-time credit. See N.Y. Penal Law § 70.40(1)(b).

Plaintiff as a released prisoner after his 2016 conviction was reversed and before he pled guilty to a new charge on June 13, 2018, (3) Plaintiff received a new commitment order after he pled guilty to a new charge on June 13, 2018, (4) the new commitment order was provided to DOCCS' officials on or about June 14, 2018, (5) despite the new commitment order, Plaintiff remained continuously confined in punitive segregation after he pled guilty to a new charge on June 13, 2018, through his release date on December 2, 2018, (6) Plaintiff's confinement in punitive segregation was based on disciplinary violations that occurred before his 2016 conviction was reversed, and (7) defendants Annucci, Morton, and Colvin were aware of, and approved, Plaintiff's placement in punitive segregation.[4] The Amended Complaint also includes new allegations regarding the conditions of Plaintiff's confinement in punitive segregation.

In light of these new allegations, and mindful of the Second Circuit's direction that a pro se Plaintiff's pleadings must be liberally construed, the Court finds that Plaintiff's Eighth and Fourteenth Amendment claims against defendants Annucci, Morton, and Colvin survive sua sponte review. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to Plaintiff's claims against defendants D'Agostino and Bruce for several reasons. First, by Plaintiff's own account, he was only housed in segregated confinement at Schenectady County C.F. for a total of two

---

[4] Although the original complaint alleged that Plaintiff's 2016 conviction was "overturned[,]" it was unclear from the allegations in that pleading whether the indictment giving rise to the criminal charges against Plaintiff was dismissed, or whether instead the New York State Appellate Division ruled that an error was committed with respect to Plaintiff's sentencing. The original complaint also did not include any allegations regarding the manner in which Plaintiff was treated after his 2016 conviction was reversed, and before he pled guilty to new charges.

days, and he had not been deemed innocent of the charge to which he originally pled guilty at the time of his arrival. Rather, the Appellate Division reversed the 2016 conviction, with leave to re-present charges to a new grand jury, on the grounds that Plaintiff "was deprived of an opportunity to consult with counsel" after the felony complaint against him was first filed and before he entered a guilty plea, and the record was silent as to whether there was a valid waiver of his right to counsel. See People v. Trapani, 162 A.D.3d 1121, 1123 (3d Dep't 2018). Under such circumstances, it is not clear that Plaintiff was entitled to pretrial detainee status upon his arrival at Schenectady County C.F., which is the only way Plaintiff's brief confinement in segregated housing could even be considered a harm of constitutional magnitude. See Bell v. Wolfish, 441 U.S. 520, 535 (1979) (holding that government officials may not subject pretrial detainees to punishment "prior to an adjudication of guilt in accordance with due process of law"); Frazier v. Coughlin, 81 F.3d 313, 317–18 (2d Cir. 1996) (per curiam) (convicted prisoner's confinement in a special housing unit for 12 days does not implicate a liberty interest); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998) (pre-hearing confinement in keeplock for twenty-one days did not deprive prisoner of liberty interest); Arce v. Walker, 139 F.3d 329, 336 (2d Cir. 1998) (segregated confinement for eighteen days did not implicate liberty interest); Bowens v. Smith, No. 11-CV-0784, 2013 WL 103575, at *10 (N.D.N.Y. Jan. 8, 2013) ("Confinement in SHU, in itself, notwithstanding its additional restrictions on inmates, has not been held to constitute cruel and unusual punishment."), report and recommendation adopted by 2013 WL 103596 (N.D.N.Y. Jan. 8, 2013); Hamilton v. Fisher, No. 10-CV-1066, 2012 WL 987374, at *8 (N.D.N.Y. Feb. 29, 2012) ("'[N]ormal' conditions of SHU confinement do not constitute an Eighth Amendment violation." (citations omitted)), report and recommendation adopted by 2012 WL 987122

(N.D.N.Y. Mar. 22, 2012); Jackson v. Johnson, 15 F. Supp. 2d 341, 363 (S.D.N.Y. 1998) ("The mere placement in keeplock for 99 days is not sufficiently egregious to constitute cruel and unusual punishment under the Eighth Amendment") (collecting cases).

Second, even assuming Plaintiff was entitled to pretrial detainee status upon his arrival at Schenectady County C.F., the allegations in the Amended Complaint plausibly suggest that Plaintiff was placed in segregated confinement upon his arrival at the facility because he engaged in wrongdoing while in DOCCS' custody that resulted in disciplinary sanctions, and was scheduled to appear before a court the following day for arraignment and, perhaps, continued incarceration. In other words, the Amended Complaint lacks any allegations which plausibly suggest that Plaintiff was placed in segregated confinement at the facility in order to punish him for something he did there. See Covino v. Vermont Dep't of Corr., 933 F.2d 128, 129 (2d Cir.1991) ("'[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons' is not a right protected by the due process clause itself." (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983))); McFadden v. Solfaro, Nos. 95-CV-1148, 95-CV-3790, 1998 WL 199923, at *8 (S.D.N.Y. Apr. 23, 1998) (finding that assignment of pretrial detainee to segregated housing based on his security classification did not violate Due Process Clause); Yant v. Scholack, No. 95-CV-9462, 1998 WL 157053, at *2 (S.D.N.Y. Apr. 3, 1998) (holding that the Due Process Clause does not give pretrial detainee protectable liberty interest relating to brief administrative confinement while undergoing intake and classification procedures); Benjamin v. Kerik, 102 F. Supp. 2d 157, 171 (S.D.N.Y. 2000), aff'd sub nom. Benjamin v. Fraser, 264 F.3d 175 (2d Cir. 2001); cf. Calhoun v. New York State Division of Parole, 999 F.2d 647, 654 (2d

Cir. 1993) (five-day delay in releasing parole violator after maximum expiration date not a "harm of a magnitude" to violate Eighth Amendment.).

Third, even if there was a punitive intent behind Plaintiff's placement in segregated housing, the Amended Complaint lacks any allegations that plausibly suggest the conditions of Plaintiff's restrictive confinement at Schenectady C.F. between his arrival on June 12 and his court appearance on June 13, 2018, differed in any respect from the housing conditions Plaintiff would have experienced following his admission to the facility as a new pretrial detainee.

Fourth, the Amended Complaint is devoid of any allegations that plausibly suggest defendants D'Agostino and Bruce were personally involved in the decision to place Plaintiff in punitive segregation following his return to DOCCS' custody on June 14, 2018.

Accordingly, Plaintiff's Eighth and Fourteenth Amendment claims against defendants D'Agostino and Bruce based on his placement in punitive segregation at Schenectady County C.F. are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Amended Complaint is accepted for filing and is the operative pleading; and it is further

**ORDERED**, that the following claims **SURVIVE** sua sponte review and require a response: (1) Plaintiff's Eighth Amendment claims against defendants Annucci, Morton, and Colvin; and (2) Plaintiff's Fourteenth Amendment due process claims against defendants Annucci, Morton, and Colvin; and it is further

**ORDERED**, that all remaining Section 1983 claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that the Clerk shall add Robert Morton, Dominic D'Agostino, and Timothy Bruce to the docket as defendants and **TERMINATE** defendants D'Agostino and Bruce from this action; and it is further

**ORDERED**, that the Clerk shall issue summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon the defendants Annucci, Morton, and Colvin. The Clerk shall forward a copy of the summons and Amended Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to Plaintiff's Amended Complaint be filed by defendants Annucci, Morton, and Colvin, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of**

17

**any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

      **ORDERED**, that the Clerk shall serve a copy of this Decision and Order on Plaintiff.

      **IT IS SO ORDERED.**

DATED:    November 19, 2021
               Albany, New York

                                         LAWRENCE E. KAHN
                                         United States District Judge