UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAMIAN R. TRAPANI,

                          Plaintiff,

v.
                                                    9:21-CV-0681
ANTHONY J. ANNUCCI; JOHN COLVIN,                    (LEK/ML)
Superintendent, Five Points Corr. Facility; and
ROBERT MORTON, Superintendent,
Downstate Corr. Facility,

                          Defendants.
_____

APPEARANCES:                                OF COUNSEL:

DAMIAN R. TRAPANI
  Plaintiff, *Pro Se*
Upstate Correctional Facility
Post Office Box 2001
Malone, New York 12953

LETITIA A. JAMES                            RACHAEL OUIMET, ESQ.
Attorney General for the State of New York  Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

## **REPORT and RECOMMENDATION**

    This matter has been referred to me for a Report and Recommendation by the Honorable

Lawrence E. Kahn, Senior United States District Judge.  Currently before the Court, in this civil

rights action filed by Damian R. Trapani ("Plaintiff") against Anthony J. Annucci, John Colvin,

and Robert Morton (collectively "Defendants"), is Defendants' motion for summary judgment

and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and 56.  (Dkt. No. 25.)  For the reasons set forth below, I recommend that Defendants' motion be granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

At this procedural posture, the remaining claims from Plaintiff's Amended Complaint based on his placement in punitive segregation are (1) a claim of cruel and unusual punishment pursuant to the Eighth Amendment; and (2) a claim that Plaintiff's due process rights were violated pursuant to the Fourteenth Amendment.  (*See generally* Dkt. No. 11; Dkt. No. 15.) Judge Kahn's Memorandum-Decision and Order dated November 19, 2021, thoroughly outlines Plaintiff's allegations and claims.  (Dkt. No. 15 at 2-7.)

### B.    Procedural History

On January 31, 2022, in lieu of an answer, Defendants filed a motion for summary judgment and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and 56.  (Dkt. No. 25.)  Plaintiff's response was due by February 22, 2022.  (Dkt. No. 26.)  On February 17, 2022, Plaintiff filed a letter requesting an extension of the time for him to respond to Defendants' motion.  (Dkt. No. 28.)  On February 22, 2022, the undersigned granted Plaintiff's request for an extension of time to respond to the motion, Plaintiff's response was due by March 8, 2022.  (Dkt. No. 29.)  On March 21, 2022, the Court *sua sponte* extended the deadline for Plaintiff to file a response to Defendants' motion for summary judgment, until April 4, 2022.  (Dkt. No. 31.)  On March 21, 2022, Plaintiff filed a response to the motion.  (Dkt. No. 32.)  On March 30, 2022, Defendants filed a reply.  (Dkt. No. 33.)

C.      **Statement of Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Statement of Material Facts and not denied by Plaintiff.  (*Compare* Dkt. No. 25, Attach. 4 [Defs.' Statement of Material Facts], *with* Dkt. No. 32 [Pl.'s Resp.].)

1.      Plaintiff is and was at all relevant times, incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

2.      DOCCS has an inmate grievance process ("IGP"), established by Part 701 of Title 7 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R."), which involves three levels of review: (1) a complaint to the Inmate Grievance Review Committee ("IGRC") at the individual facility, (2) review by the Superintendent of the facility, and (3) appeal to the Central Office Review Committee ("CORC").

3.      CORC is the final appellate level of the IGP.

4.      Plaintiff's claims in this action are proper subjects for a grievance pursuant to the DOCC's IGP.[1]

5.      Plaintiff did not file an appeal to CORC related to the claims in this action.[2]

---

[1]      Notwithstanding Plaintiff's objection, the Court deems the fact admitted because Plaintiff fails to include any citation to the record. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of the record."); *see N.Y. Teamsters v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where the district court "reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a response to the statement of material facts not in dispute that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations"); *Jamison v. Metz*, 865 F. Supp. 2d 204, 207 n.1 (N.D.N.Y. 2011) (Suddaby, J.) ("[W]herever [the *pro se*] Plaintiff has [willfully] failed to cite record evidence in support of his denials of properly supported facts . . . the Court has deemed such facts admitted to the extent that they are not clearly in dispute.").

[2]      *See*, *supra*, note 1.

### D.    Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.    Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert the following five arguments: (1) Plaintiff failed to exhaust his administrative remedies before commencing this action; (2) Plaintiff failed to state a claim with respect to his Eighth Amendment claim; (3) Plaintiff failed to state a claim with respect to his Fourteenth Amendment claim; (4) Plaintiff failed to allege the personal involvement of Defendants; and (5) in the alternative, Defendants are entitled to dismissal based on the doctrine of qualified immunity. (*See generally* Dkt. No. 25, Attach. 1 [Defs.' Mem. of Law].)

First, Defendants argue that the IGP was fully available to Plaintiff and—despite successfully appealing numerous other grievances to CORC while incarcerated at Five Points Correctional Facility—Plaintiff did not appeal any grievance to CORC regarding his claims in this action.  (Dkt. No. 25, Attach. 1 at 8-11.)  Further, Defendants argue that Plaintiff alleges he filed a habeas petition regarding his confinement in DOCCS, but does not allege that he filed a grievance appeal related to his allegedly wrongful disciplinary confinement.  (*Id*.)  Defendants argue that because the time for Plaintiff to exhaust his claims has expired, the Amended Complaint should be dismissed with prejudice.  (*Id*.)

Second, Defendants argue that Plaintiff's Eighth Amendment claim "must fail because he cites no authority for the novel—and irrational—proposition that an incarcerated individual serving a term of disciplinary confinement whose conviction is reversed but then takes a plea on the same indictment and returns to DOCCS custody need not finish his term of disciplinary confinement."  (*Id*. at 12-15.)  Further, Defendants argue that the conditions to which Plaintiff was subjected to while in disciplinary confinement do not support an Eighth Amendment cruel and unusual punishment claim.  (*Id*.)  Defendants argue that the conditions Plaintiff alleges he

was subjected to in disciplinary confinement were typical and merely included fewer privileges compared to prisoners in the general population. (*Id*.) Moreover, Defendants argue that Plaintiff failed to allege facts plausibly suggesting that Defendants knew of and disregarded an excessive risk to his health and safety. (*Id*.) In addition, Defendants argue that Plaintiff's Eighth Amendment claim against Defendant Morton should be dismissed because Plaintiff was at Downstate Correctional Facility for "at most—several weeks" and temporary deprivations do not generally violate a prisoner's constitutional rights. (*Id*.)

Third, Defendants argue that Plaintiff's Fourteenth Amendment claim must fail because although Plaintiff's disciplinary confinement lasted approximately 175 days, and thus was of intermediate duration, Plaintiff's clear and specific allegations describe standard conditions. (*Id*. at 15-18.) More specifically, Defendants argue that Plaintiff failed to allege facts plausibly suggesting atypical hardship. (*Id*.)

Fourth, Defendants argue that Plaintiff failed to allege facts plausibly suggesting the personal involvement of Defendants in the constitutional violations. (*Id*. at 18-20.) More specifically, Defendants argue that Defendant Annucci's role as commissioner of DOCCS and the role of Defendants Morton and Colvin as superintendents of their respective facilities, cannot support Plaintiff's conditions of confinement claims. (*Id*.) Defendants argue that Plaintiff's hearsay allegation that he was "told" that Defendant Morton reviewed his continued disciplinary confinement after his return from being resentenced, is insufficient to allege personal involvement. (*Id*.) In addition, Defendants argue that—aside from that vague hearsay assertion—Plaintiff does not allege that Defendants were specifically made aware of Plaintiff's concerns. (*Id*.)

Fifth, Defendants argue that, in the alternative, they are entitled to dismissal based on the doctrine of qualified immunity. (*Id*. at 20-22.) More specifically, Defendants argue that Plaintiff cites "no authority for his position that it is somehow improper or unlawful to have him continue the term of disciplinary confinement he was serving for the reversal of his conviction and subsequent resentencing." (*Id*.) Thus, Defendants argue that it was objectively reasonable for them to believe that Plaintiff's return to disciplinary confinement after his resentencing was lawful. (*Id*.)

### 2.    Plaintiff's Opposition

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff asserts the following three arguments: (1) Defendant's motion is premature and should be denied or stayed until discovery is complete; (2) once Plaintiff's conviction and sentence were overturned, any obligation to complete his punitive segregation sanction extinguished with the sentence, he was not afforded a hearing with respect to his punitive segregation confinement, and he was deprived of his medically prescribed boots and other property while in punitive confinement which resulted in atypical conditions of confinement; and (3) Defendants were personally involved in Plaintiff's wrongful confinement, which included their use of an invalid sentence and commitment order and disobeying a court order. (*See generally* Dkt. No. 32 at 12-16.) In addition, Plaintiff filed a declaration wherein he asserts that: (1) in June 2018, he filed an inmate grievance related to the issues in this action, which he appealed with the IGP at Downstate Correctional Facility; (2) in July 2018, he signed for a decision from "either Inmate Grievance Resolution Committee (IGRC), IGP Supervisor, or Superintendent, Defendant Robert Morton" denying his inmate grievance complaint as untimely and noting that it would "not be entertained further"; (3) each of the two grievances referred to by Defendants in their memorandum of law— titled "exams not performed" and "status not given on grievance"—related to the issues

complained of in the Amended Complaint.  (Dkt. No. 32 at 17-21.)  Based on these assertions, Plaintiff argues that a genuine issue of material fact remains regarding (1) whether the language "will not be entertained further" indicated that administrative remedies were unavailable to Plaintiff, and (2) whether Plaintiff's other grievances satisfied the exhaustion requirements.  (*Id.*)

### 3.     Defendants' Letter Reply[3]

Generally, in further support of their motion for summary judgment, Defendants assert the following three arguments: (1) Plaintiff cannot rely on a claim that discovery has not taken place to avoid admitting that he did not file a CORC appeal about the subject claims because whether he filed a CORC appeal is squarely within his personal knowledge; (2) Plaintiff fails to allege facts plausibly suggesting an Eighth or Fourteenth Amendment claim because (a) his sentence and his period of disciplinary confinement are not viewed as equivalent under the law, (b) the allegation that Plaintiff did not have his medical boots does not constitute an unreasonable risk of serious damage to his health or the denial of minimum civilized measure of life's necessities to satisfy the objective prong of his Eighth Amendment claim, (c) Plaintiff fails to allege facts plausibly suggesting that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety to satisfy the subjective prong of his Eighth Amendment claim, and (d) Plaintiff fails to allege facts plausibly suggesting an atypical hardship to support his Fourteenth Amendment claim; and (3) Plaintiff's conclusory claim that DOCCS had a policy and Defendants should have been aware because they were supervisory officials is insufficient to show personal involvement.  (Dkt. No. 33.)

---

[3]     In the future, defense counsel is cautioned to comply with Local Rule 7.1(b)(1), which provides that "[a]ll memoranda of law shall contain a table of contents."

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing A Motion For Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]  As for the materiality requirement, a dispute of fact is

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.

P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute–even if that non-

---

[4]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to
create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation
omitted).  As the Supreme Court has explained, "[The non-movant] must do more than simply
show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.
Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

movant is proceeding *pro se*.[5]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[6]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[7]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1.  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[5]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[6]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[7]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[8]–even when the non-movant was proceeding *pro se*.[9]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[10]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[8]    Among other things, Local Rule 56.1 (previously Local Rule 7.1(a)(3)) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1.

[9]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[10]    *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1(b)(3)); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

### B.    Standard Governing Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The [PLRA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.").  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly.  *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "'using all steps that the [government] agency holds out, and doing so properly'" (quoting *Woodford*, 548 U.S. at 90)).  In New York State prisons, DOCCS has a well-established three-step IGP. 7 N.Y.C.R.R. § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence.  7 N.Y.C.R.R. § 701.5(a)(1).  A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id.* § 701.5(b)(1).  If there is no such informal resolution, the full IGRC conducts a hearing within

sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

The superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g). If the grievant wishes to appeal the superintendent's response to CORC, he must do so within seven calendar days of receipt of that response. *Id.* § 701.8(h).

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps

that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the

merits).") (quotations marks and citations omitted).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its

own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858.  More specifically,

section 1997e(a) provides that only those administrative remedies that "are available" must first

be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion

requirement hinges on the availability of administrative remedies[.]") (quotation marks and

citations omitted).  In the PLRA context, the Supreme Court has determined that "availability"

means that "an inmate is required to exhaust those, but only those, grievance procedures that are

capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859

(quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal

administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60.  First,

"an administrative procedure is unavailable when (despite what regulations or guidance materials

may promise) it operates as a simple dead end—with officers unable or consistently unwilling to

provide any relief to aggrieved inmates." *Id.* at 1859.  "Next, an administrative scheme might be

so opaque that it becomes, practically speaking, incapable of use." *Id.*  Finally, an administrative

remedy is not "available" when "prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.  In

*Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted

that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]"  The

illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *Mena v. City of New

York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, the defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216. The plaintiff must then establish the IGP grievance procedure was unavailable to him under *Ross*. *Id.*

**C.    Legal Standard Governing Motions To Dismiss For Failure To State A Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

14

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at

212, n.17 (citing Supreme Court cases) (emphasis added).[11]

    The Supreme Court has explained that such *fair notice* has the important purpose of

"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases);

*Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.

2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949-52 (2009).

    Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a

---

[11]    *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

However, "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (Sharpe, M.J.) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). As a result, *Twombly* and *Iqbal* notwithstanding, the court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 139, 146 (2d Cir. 2002).

## III.    ANALYSIS

After carefully considering the matter, I recommend that Defendants' motion be granted in part and denied in part.

### A.    Whether Plaintiff Failed to Exhaust His Administrative Remedies

I recommend that the Court deny Defendants' motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies because there appears to be a genuine dispute of material fact whether (1) Plaintiff did, in fact, exhaust his administrative remedies, or (2) in the alternative, whether administrative remedies were unavailable to Plaintiff.

First, Plaintiff alleges that the two appeals to CORC, titled "status not given on grievance" and "exams not performed," "relate to events complained of in this action." (Dkt. No. 32 at 19.)[12] Construing all reasonable inferences in Plaintiff's favor, the Court is unable to

---

[12]    The Court notes that the grievances and respective appeals titled "status not given on grievance" and "exams not performed," are not currently before the Court. (*See generally* docket sheet.)

determine whether Plaintiff's claims in this action were encompassed in those grievances and appeals. Thus, an issue of fact remains, at this juncture whether Plaintiff failed to exhaust his administrative remedies.

Second, to the extent that Plaintiff failed to exhaust his administrative remedies, a genuine issue of fact remains for trial whether administrative remedies were unavailable to Plaintiff. Construing all reasonable inferences in Plaintiff's favor, a genuine issue of fact remains whether prison administrators thwarted Plaintiff from taking advantage of the grievance process through misrepresentation by stating that his grievance would "not be entertained further" despite Plaintiff's right to appeal.

As a result, I recommend that the Court conduct an exhaustion hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011) to determine whether Plaintiff properly exhausted his administrative remedies.

**B.     Whether Plaintiff Sufficiently Stated a Claim for Cruel and Unusual Punishment Pursuant to the Eighth Amendment**

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981).

Prison conditions can constitute "cruel and unusual punishment" if prison officials act (or fail to act) with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A constitutional violation under these principles has both objective and subjective components. First, a prisoner must be incarcerated under conditions that, objectively, pose "a substantial risk of serious harm." *Hayes v. N.Y.C. Dep't of*

*Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 834).  Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," a prison official must possess "a 'sufficiently culpable state of mind,'" which "[i]n prison-conditions cases . . . is one of 'deliberate indifference' to inmate health or safety."  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.'"  *Jolly Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted).  "Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'"  *Brown v. Doe*, 13-CV-8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

There is no "bright line test" to determine if a risk of serious harm is "substantial" for Eighth Amendment purposes.  *Lewis, 944 F.3d* at 432.  Rather, a court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original); *see Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citing *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)) ("There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'"); *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Helling*, 509 U.S. at 35-36; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) ("Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate

contemporary standards of decency.").  "In other words," the Supreme Court has written, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36.

To satisfy the subjective element, "[t]o constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

Thus, an Eighth Amendment claim based on conditions of confinement requires that the plaintiff demonstrate that official's conduct reflects "the deliberate infliction of punishment," and not just "an ordinary lack of due care for prisoner interests or safety." *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019); *see Farmer*, 511 U.S. at 834-35 ("Deliberate indifference describes a state of mind more blameworthy than negligence.").  While officials need not engage in "acts or omissions for the very purpose of causing harm or with knowledge that harm will result," they must at least "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 835, 837.  In other words, they must act with a *mens rea* "consistent with recklessness in the criminal law." *Id.* at 837.  Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 835; *see, e.g.*, *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result.").  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

I recommend that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed because Plaintiff failed to allege facts plausibly suggesting the objective or subjective elements of his claim.[13]

Even accepting Plaintiff's allegations as true—that Defendants placed him in punitive segregation, did not return the bulk of his personal belongings, and denied him his medically prescribed boots—the facts are insufficient to plausibly suggest that he was incarcerated under conditions that objectively posed a substantial risk of serious harm. *See Williams v. Gumbula*, 13-CV-1132, 2018 WL 1795547 (W.D.N.Y. Apr. 16, 2018) (concluding that the plaintiff's claim that he suffered inhumane conditions because correction officers refused to turn water on to his cell for nine days fails to support an Eighth Amendment claim); *Young v. Tryon*, 12-CV-6251, 2015 WL 309431, at *10 (W.D.N.Y. Jan. 23, 2015)*, report and recommendation adopted*, 2015 WL 554807 (W.D.N.Y. Feb. 11, 2015) (citing *Walker v. Schriro*, 11-CV-9299, 2013 WL 1234930, *13 (S.D.N.Y. 2013) (allegations that plaintiff was temporarily deprived of food, shower, linens, running water or bathroom were insufficient to state a claim)) (dismissing Eighth Amendment claims arising from temporary deprivations as a result of a lockdown); *Miller v. Campell*, 804 F. Supp. 159, 162 (D. Kan. 1992) (finding that the "brief" suspension of water and electricity during a lockdown was not a serious deprivation of basic human needs).[14]

---

[13]     However, I reject Defendants' argument that Plaintiff was obliged to—and thus, his Amended Complaint was insufficient because he failed to—provide "authority" to support his claim. *See Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (quoting *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997)) (quotation marks omitted) ("Rule 8's liberal pleading principles do not permit dismissal for failure in a complaint to cite a statute, or to cite the correct one . . . . Factual allegations alone are what matters.")

[14]     I also note that Defendants appear to conflate the standards for Plaintiff's due process claim with the standard for his conditions of confinement claim.  (Dkt. No. 25, Attach. 1 at 14 [citing *Boyd v. Doe #1*, 18-CV-1333, 2019 WL 5287973, at *12 (N.D.N.Y. Oct. 18, 2019) (considering a due process claim and concluding that the plaintiff failed to allege facts plausibly

Although Plaintiff alleged that he was denied his medically prescribed boots while confined in punitive segregation, which inhibited his ability to properly exercise (Dkt. No. 11 at ¶ 65), the Second Circuit has "recognized that [only] some opportunity for exercise must be afforded to prisoners." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see Alston v. Coughlin*, 668 F. Supp. 822, 837 (S.D.N.Y. 1987) ("Opportunities for exercise must be afforded to prisoners"); *Rhem v. Malcolm*, 371 F. Supp. 5894, 627 (S.D.N.Y. 1974) ("The right of a prisoner to reasonable physical exercise is fundamental" so that the "50 minute per week opportunity for exercise at MHD (even supplemented by other recreation programs) does not meet constitutional standards" for pretrial detainees), *aff'd*, 507 F.2d 333 (2d Cir. 1974); *Albro v. Onondaga*, 681 F. Supp. 991, 995 (N.D.N.Y. 1988) (Munson, C.J.) ("Detainees, even those [held] for only a short time, ought to be afforded at least 1 hour of exercise per day"). Plaintiff does not allege that he was denied the opportunity to exercise or that the opportunity was deficient in some way. (*See generally* Dkt. No. 11.) In fact, Plaintiff alleges that he was afforded recreational time each day while in punitive segregation. (Dkt. No. 11 at ¶ 64.)

Further, even assuming *arguendo*, that Plaintiff's allegations were sufficient to satisfy the objective prong of the Eighth Amendment, he fails to allege facts plausibly suggesting that Defendants knew of and disregarded an excessive risk to Plaintiff's health and safety. Construing all reasonable inferences in Plaintiff's favor, he alleged that Defendants were responsible for a policy that resulted in his punitive segregation assignment. (Dkt. No. 11 at ¶¶ 55, 77, 83.) However, he does not allege facts plausibly suggesting that Defendants "were responsible for or personally involved in the alleged unconstitutional conditions" that Plaintiff

---

suggesting the deprivation of a liberty interest because the alleged deprivation of privileges did not constitute a serious hardship)].)

experienced in punitive segregation. *Rasheen v. Adner*, 356 F. Supp. 3d 222, 241 (N.D.N.Y. Jan. 28, 2019).

As a result, I recommend that Plaintiff's claim of cruel and unusual punishment related to his confinement in punitive segregation, pursuant to the Eighth Amendment, be dismissed for failure to state a claim upon which relief may be granted.

### C.    Whether Plaintiff Sufficiently Stated a Claim that His Due Process Rights Were Violated Pursuant to the Fourteenth Amendment

"[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendants(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 2235 (2d Cir. 2001).

"Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). When evaluating whether an inmate has suffered "atypical and significant hardship," courts must compare the conditions imposed upon that inmate with the conditions "endured by prisoners in [the] general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999). When evaluating the severity of an inmate's hardship, courts should consider both the duration and the conditions of confinement. *See Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009).

The Second Circuit has taken the position that restrictive confinement—like punitive segregation—without unusual conditions, for a period of up to 101 days, does not constitute an atypical hardship. *Ortiz*, 380 F.3d at 654-55. However, for periods that fall into the "'intermediate duration' of between 101 to 305 days, 'development of a detailed record'

regarding the conditions of confinement as compared to 'ordinary prison conditions' is required" to determine whether a prisoner's liberty interest was infringed. *Chavez v. Gutwein*, 20-CV-0342, 2022 WL 1487781, at *5 (S.D.N.Y. May 11, 2022) (quoting *Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004)); *see Johnson v. Schiff*, 17-CV-8000, 2019 WL 4688542, at *22 (S.D.N.Y. Sept. 26, 2019) (declining to dismiss due process claim for failure to allege a liberty interest where the plaintiff had been sentenced to 180 days in punitive segregation, because "development of a detailed record of the conditions . . . [was] required."); *Koehl v. Bernstein*, 10-CV-3808, 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (same with respect to a plaintiff who spent 120 days in SHU, and concluding that, on a motion to dismiss the court could not dismiss the plaintiff's due process claim "for failure to describe in detail the conditions of his confinement"), *report and recommendation adopted by*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011).

Based on the allegations contained in the Amended Complaint, Plaintiff spent approximately 175 days in punitive segregation. (Dkt. No. 11 at ¶ 76 [alleging that Plaintiff was "incarcerated and in punitive segregation, continuously, without interruption, from June 12, 2018[,] to December 2, 2018, total[]ing 171 days."].) Thus, Plaintiff's confinement to punitive segregation was an "intermediate duration," which requires the development of a detailed record regarding the conditions of confinement to determine whether Plaintiff's liberty interest was infringed.

The cases cited by Defendants in support of their motion are distinguishable and unavailing. First, Defendants cite to *Young v. Polizzi*, *Smith v. Costello*, and *Israel v. Brandt*, which were decided on a motions for summary judgment and thus, after there was a development of the record regarding the conditions of confinement that the plaintiff experienced. *Young v.*

*Polizzi*, 16-CV-0660, 2018 WL 3949967, at *6 (N.D.N.Y. July 11, 2018) (Hummel, M.J.); *Smith v. Costello*, 15-CV-0401, 2017 WL 1155811, at *5-6 (N.D.N.Y. Mar. 3, 2017) (Stewart, M.J.); *Israel v. Bradt*, 228 F. Supp. 3d 237, 239 (W.D.N.Y. 2017).  Second, Defendants cite to *Boyd v. Doe #1* and *Judd v. Guynup*, which related to the plaintiffs' restrictive confinement for periods of less than 101 days.  *Boyd v. Doe #1*, 18-CV-1333, 2019 WL 5287973, at *12 (N.D.N.Y. Oct. 18, 2019) (McAvoy, J.); *Judd v. Guynup*, 12-CV-0058, 2012 WL 5472113, at *5-7 (N.D.N.Y. Oct. 17, 2012) (Treece, M.J.).

As a result, I recommend that the Court deny Defendants' motion to dismiss Plaintiff's due process claim pursuant to the Fourteenth Amendment for failure to state a claim upon which relief may be granted.

### D.    Whether Plaintiff Sufficiently Alleged Defendants' Personal Involvement

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

"It is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotations omitted).  In *Tangreti*, the

Second Circuit recognized that, after *Ashcroft v. Iqbal*, there is "no special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Instead, a plaintiff "must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d at 618.

Here, Plaintiff alleges that Defendants "created, authorized, maintained, permitted, and enforced a policy or procedure of not releasing . . . inmates in punitive segregation, who . . . had their sentences terminated due to their underlying criminal convictions and sentences being annulled and expunged for purposes of placing them back in punitive segregation if they return." (Dkt. No. 11 at ¶ 77.)  In addition, Plaintiff alleges that "the matter regarding him being placed back in punitive segregation . . . was taken all the way up to the superintendent . . . to no avail." (*Id.* at ¶ 54.)  Plaintiff alleged that he was informed by a DOCCS employee that it was "essentially up to the superintendent whether to place an inmate, upon returning from a court-ordered discharge, back in punitive segregation."  (*Id.*)

Given the special liberality afforded to *pro se* complaints, I find that Plaintiff has alleged facts plausibly suggesting the personal involvement of Defendants Colvin and Morton—both of whom were superintendents of the facilities where Plaintiff was confined to punitive segregation—sufficient to survive Defendants' motion to dismiss.  I reject Defendants' argument that the Court should not consider Plaintiff's allegations that are based on hearsay.  *See PDV USA, Inv. V. Interamerican Consulting Inc.*, 20-CV-3699, 2021 WL 2581569, at *8 (S.D.N.Y. June 22, 2021) ("[T]he fact that the news reports constitute hearsay [does not] warrant striking, because admissibility of an allegation is not a concern at the motion to dismiss stage."); *Campanella v. Cnty. of Monroe*, 853 F. Supp. 2d 364, 378 (W.D.N.Y. 2012) ("Although, as

pleaded, these allegations are based on hearsay, that does not bar the Court from considering them on a motion to dismiss."). As a result, I recommend that the Court deny Defendants' motion to dismiss to the extent that it argues that Plaintiff failed to allege facts plausibly suggesting the personal involvement of Defendants Colvin and Morton.

However, I find that the Amended Complaint fails to allege facts plausibly suggesting the personal involvement of Defendant Annucci. Plaintiff does not allege that Defendant Annucci was aware of or involved in any way with Plaintiff's punitive segregation assignment. As a result, I recommend that the Court grant Defendants' motion to dismiss Plaintiff's claims against Defendant Annucci for lack of personal involvement. *See Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 441-42 (E.D.N.Y. 2012) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) ("[T]he fact that [the defendant] 'was in a high position of authority is an insufficient basis for the imposition of personal liability.'").

### E.     Whether Defendants are Entitled to Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

27

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). The Court has discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson* 555 U.S. at 236).

A right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft, 563 U.S. at 741.*

In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of N. Y.,* 612 F.3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1867 (2017). Therefore, the district court may first ask whether it was objectively reasonable for any of the defendants to believe their conduct was not unlawful at the time. *Simpson v. City of N. Y.*, 793 F.3d 259, 268 (2d Cir. 2015). Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Because the focus is on whether the officer had fair notice that her conduct was

unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

"Although a defendant may assert the defense of qualified immunity in a motion to dismiss, the Second Circuit has held that it is very difficult for such a defense to succeed at the pleading stage." *Charles v. New York State DOCCS*, 07-CV-1274, 2009 WL 890548, at *10 (N.D.N.Y. Mar. 31, 2009) (citing *McKenna v. Wright*, 386 F.3d 432, 436-37 (2d Cir. 2004)). "The defense must be based on facts appearing on the face of the complaint." *Charles*, 2009 WL 890548, at *10 (citing *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008)); *see Bernstein v. City of New York*, 06-CV-0895, 2007 WL 1573910, *9 (S.D.N.Y. May 24, 2007) (quoting ("[b]ecause the qualified immunity defense necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to Rule 12(b)(6).'").

Here, whether Defendants can successfully assert the defense of qualified immunity depends, to a great extent, on the facts concerning Plaintiff's punitive segregation, what actions they took, and why they took those actions in light of surrounding circumstances. As a result, I find that Defendants' motion to dismiss on this ground is premature and recommend that it be denied. *Rivera v. Fischer*, 655 F. Supp. 2d 235, 239-40 (W.D.N.Y. 2009).

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment and to dismiss (Dkt. No. 25) be <u>**GRANTED**</u> **to the extent that** (1) Plaintiff's conditions of confinement claim pursuant to the Eighth Amendment be dismissed, and (2) all of Plaintiff's claims against Defendant Annucci be dismissed for failure to state a claim upon which relief may be granted; and <u>**DENIED**</u> **to the extent that** it sought (1) dismissal for failure to exhaust administrative

remedies, and (2) dismissal of Plaintiff's due process claim pursuant to the Fourteenth Amendment against Defendants Morton and Colvin; and it is further respectfully

**ORDERED** that the Clerk of the Court shall provide Plaintiff with a copy of this Report and Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: June 21, 2022
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge